Defendant-appellant, William J. Donaldson, appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, granting the motion for relief from judgment of plaintiff-appellee, Dawn M. Donaldson.
The parties were divorced by judgment entry filed April 10, 1996. A shared parenting plan attached to and incorporated in the judgment entry ("the original shared parenting plan") provided for the parties' two minor sons to spend one hundred three hours per week with appellant and sixty-five hours per week with appellee,[1] and for the parties to "split 50/50 the cost of day care." Appellant was ordered to pay $204 per month in child support to appellee. The shared parenting order work sheet attached to the judgment entry shows that the child support calculation (1) was based upon an annual income of $42,738 for appellant and $31,000 for appellee, and (2) reflected a deviation of thirty-two percent from the child support guidelines due to the "father spending so much time with [the] children."
On August 8, 1997, appellee filed a motion to modify the original shared parenting plan and the amount of child support. By decision filed September 20, 1997, the magistrate modified the shared parenting plan as follows:
1. Physical living arrangements:
 A. Week One: Children shall reside with Mother from Saturday at 7:00 P.M. to [Wednesday][2] at 7:00 A.M. * * *[.]
 B. Week Two: Children shall reside with Mother from Saturday at 7:00 P.M. until the conclusion of school and/or day care on Wednesday.
* * *
 4. Counsel for both parties shall within 2 weeks submit to the Court documentation as to each parties' income, expenses, health care costs and any other matter pertinent to child support. Child support shall be calculated by applying the same percentage to the guideline amount as was applied in the parties' original shared parenting plan (32% of guideline amount).
* * *
 6. All other provisions of the parties' original shared parenting plan shall remain unaffected.
The revised shared parenting plan thus provided for the children to spend eighty-four hours with appellee during week one (and eighty-four hours with appellant), and ninety-five hours with appellee during week two (and seventy-three hours with appellant). Over a two-week period, these numbers average eighty-nine and one half hours per week with appellee and seventy-eight and one-half hours per week with appellant.
By decision filed October 29, 1997, the magistrate increased appellant's child support obligation from $204 per month to $228.97 per month. The child support calculation was based upon an annual income of $48,207 for appellant (up from $42,738) and $31,000 for appellee and reflected a deviation of thirty-two percent from the child support guidelines. The magistrate explained the deviation as follows:
 The child support computed in accordance with the child support guideline worksheet attached hereto is $701.49 per month, plus poundage. The parties agree that the Court should deviate from the guideline amount by applying the same percentage to the guideline amount as was applied in the Decree (32%). The Court finds that the amount computed in accordance with the guideline worksheet would be unjust, inappropriate and not in the best interest of the children, and that a deviation is warranted based upon the following factors: the children are residing with Defendant one half of the time [ORC Sec. 3113.215(B)(3)(d)], Defendant is obligated to pay one half of the children's day care expenses while they are residing with Plaintiff [ORC Sec. 3113.215(B)(3)(c) or (j)]. The Court finds that the parties' agreement that Defendant shall pay 32% of the guideline amount is reasonable, appropriate and in the best interest of the children given the above factors.
On November 7, 1997, appellee filed objections to the magistrate's decision. Appellee first alleged that appellant was earning $50,500 a year since October 1, 1997. Appellee then challenged the magistrate's calculation of the child support on the grounds that it did not take into account appellant's "real" annual income of $50,500 or the substantial change in time spent by the children with each parent. By decision filed December 12, 1997, the trial court overruled appellee's objections and affirmed the magistrate's decision.
On December 22, 1997, appellee filed a motion for reconsideration as well as a request for findings of fact and conclusions of law. The trial court never ruled on appellee's motion, but issued findings of fact and conclusions of law on January 26, 1998. The trial court found that appellant's parenting time with the children had decreased from one hundred three hours per week to seventy-nine hours per week, that appellee's parenting time with the children had increased from sixty-five hours per week to eighty-nine hours per week, and that the original deviation in appellant's child support obligation was partly based upon appellant's "spending so much time with the children." The trial court held that "the amount computed in accordance with the guideline worksheet would be unjust, inappropriate and not in the best interest of the children, and that a deviation [was] warranted." (Emphasis omitted.)
On February 2, 1998, appellee filed a motion for relief from judgment pursuant to Civ.R. 60(B)(5) from (1) the trial court's affirmance of the magistrate's decision, and (2) the court's findings of fact and conclusions of law. By entry filed March 17, 1998, the trial court granted appellee's Civ.R. 60(B) motion, set aside the magistrate's October 29, 1997 decision, and remanded the case for a de novo hearing on all issues relating to child support. Both parties were ordered to provide the trial court with all current and past income information.
On March 26, 1998, appellant filed a motion for reconsideration and a motion to dismiss. Neither motion was ruled upon by the trial court. Appellant now appeals, setting forth one assignment of error.
Before addressing appellant's sole assignment of error, we must first determine whether the order appealed from, that is, the trial court's grant of appellee's Civ.R. 60(B) motion, is a final appealable order as defined by R.C. 2505.02, which would vest this court with jurisdiction.
R.C. 2505.02 defines a final appealable order, in pertinent part, as follows:
 (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment.
 (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment.
 (3) An order that vacates or sets aside a judgment or grants a new trial.
As a general rule, a judgment granting a Civ.R. 60(B) motion is a final appealable order. Bourque v. Bourque (1986), 34 Ohio App.3d 284,286. However, a party may seek Civ.R. 60(B) relief only from a final judgment. Jarrett v. Dayton Osteopathic Hosp., Inc. (1985), 20 Ohio St.3d 77, 78. In the case at bar, appellee sought relief from both the trial court's affirmance of the magistrate's October 29, 1997 decision and the trial court's findings of fact and conclusions of law. Because both decisions by the trial court were final judgments, we find that the trial court's grant of appellee's Civ.R. 60(B) motion is a final appealable order under R.C. 2505.02. Having so found, we now turn to appellant's sole assignment of error, which states:
 The trial court erred to the prejudice of the Defendant-Appellant by granting Plaintiff-Appellee's Motion Under Civ. Rule 60(B).
Appellee filed her motion for relief from judgment pursuant to Civ.R. 60(B)(5), which provides that "[o]n motion and upon such terms as are just, the court may relieve a party * * * from a final judgment, order or proceeding for * * * any other reason justifying relief from the judgment." The trial court's decision to grant relief from judgment under Civ.R. 60(B) is discretionary. Absent an abuse of discretion, such ruling will not be reversed on appeal. Griffey v. Rajan (1987), 33 Ohio St.3d 75, 77. In such proceedings, the appellate court should not independently weigh evidence, but should be guided by the presumption that the trial court's findings are correct. See Miller v. Miller (1988),37 Ohio St.3d 71. The trial court should resolve any doubt in favor of the motion to set aside the judgment so that cases may be decided upon their merits. General Motors Acceptance Corp. v. Deskins (1984), 16 Ohio App.3d 132, 134.
Appellant first argues that the trial court erred in granting appellee's Civ.R. 60(B)(5) motion because such motions "should only be granted under `substantial, unusual, and extraordinary' circumstances." Appellant cites Crouser v. Crouser (1988),39 Ohio St.3d 177, for the bold proposition that "Civil Rule 60(B) is a procedural mechanism that should be reserved for relief when parties have no substantive remedy available to them for the review of judgments, and where the circumstances of the parties have changed sufficiently to make prospective application inequitable." (Emphasis added.)
We note at the outset that while the Supreme Court of Ohio did indeed make the foregoing holding in Crouser, the holding was however narrowly tailored to Civ.R. 60(B)(4), which it partly mirrors, and not to Civ.R. 60(B) in toto. With regard to Civ.R. 60(B)(5), while it is well-established that the grounds for invoking Civ.R. 60(B)(5) should be substantial, Caruso-Ciresi, Inc. v. Lohman (1983), 5 Ohio St.3d 64, paragraph two of the syllabus, it is equally well-established that "Civ.R. 60(B) is a remedial rule that is to be liberally construed with a view for effecting a just result." State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections (1993), 67 Ohio St.3d 134,136. "The policy in Ohio is to decide cases on their merits and to afford Civ.R. 60(B) relief where equitable." S. Ohio Coal Co. v. Kidney (1995), 100 Ohio App.3d 661, 668.
Appellant also argues that appellee "had the substantive remedy of appealing the judgment to the appellate court" which she did not, and that as a result, appellee's Civ.R. 60(B) motion should have been dismissed. We disagree.
Because "motions for reconsideration of a final judgment in the trial court are a nullity," Pitts v. Ohio Dept. of Transp. (1981), 67 Ohio St.2d 378, 379, a Civ.R. 60(B) motion is the only proper vehicle for obtaining relief in the trial court after a final judgment. Antonopoulos v. Eisner (1972), 30 Ohio App.2d 187, paragraph one of the syllabus. While "[a] party may not use a Civ.R. 60(B) motion as a substitute for a timely appeal," Doe v. Trumbull Cty. Children Serv. Bd. (1986), 28 Ohio St.3d 128, paragraph two of the syllabus, "[t]he failure of a party to appeal from a judgment does not serve as a bar to a later attempt * * * to vacate the judgment." DeRyt v. DeRyt (1966), 6 Ohio St.2d 31, paragraph one of the syllabus. "The remedies of appeal and vacation are `cumulative' or, more precisely, `alternative[.]'" Id. at 35.
In the case at bar, we are not convinced that appellee filed her Civ.R. 60(B) motion as a substitute for a timely appeal. The record shows that she first mistakenly filed a motion for reconsideration. She then filed a request for findings of facts and conclusions of law, partly to bring to the attention of the trial court some erroneous statements made by the court in its December 12, 1997 decision. Then, and only then, did appellee file her Civ.R. 60(B) motion. Under the circumstances of this case, we find that appellee's failure to appeal the trial court's affirmance of the magistrate's decision was not a bar to filing her Civ.R. 60(B) motion. DeRyt at 35-36.
Next, appellant argues that appellee's Civ.R. 60(B) motion should have been dismissed on res judicata grounds. Appellant contends that appellee's motion for reconsideration was in reality "a first attempt at a [Civ.R. 60(B)] Motion for Relief." Appellant contends that since appellee's motion for reconsideration was denied by the trial court, and since appellee's Civ.R. 60(B) motion requested the same relief and stated the same facts as the motion for reconsideration, the doctrine of res judicata precluded the trial court from considering appellee's Civ.R. 60(B) motion.
We note at the outset that contrary to appellant's contention, the trial court never ruled upon appellee's motion for reconsideration. Nor do we accept the contention that appellee disguised a Civ.R. 60(B) motion as a motion for reconsideration.
As already noted, motions for reconsideration of a final judgment in the trial court are a nullity. Pitts,67 Ohio St.2d at 379. Appellee filed her motion for reconsideration after the trial court affirmed the magistrate's October 29, 1997 decision. Because, as previously stated, such affirmance by the trial court was a final judgment, the motion for reconsideration was a nullity. As a result, "there can be no argument that res judicata applies in this case because there was only one valid motion," that being appellee's Civ.R. 60(B) motion filed on February 2, 1998. Kemp v. Montville Plastics and Rubber, Inc. (Feb. 9, 1990), Geauga App. No. 89-G-1503, unreported, at 5.
Finally, appellant argues that the trial court erred in granting appellee's Civ.R. 60(B) motion inasmuch as the reasons given by the trial court for granting the motion were "wholly without basis." The trial court's March 17, 1998 decision and entry states that "[t]he Court finds that the amount of child support as set forth in the magistrate's decision * * * is not equitable. * * * It appears that the Plaintiff [appellee] was unaware of the actual amounts upon which the support `agreement' was based. The Court finds that the Defendant [appellant] did not adequately disclose his income verification information."
Appellant first asserts that the magistrate's decision "was based on several hours of negotiations[.] * * * It was basically an Agreed Entry to settle all issues between the parties and avoid a lengthy hearing on the matter[.]" We found no evidence in the record that supports appellant's assertion. However, we agree with appellant that during a hearing before the magistrate on September 26, 1997, the parties agreed to the revised shared parenting plan as later set forth in the magistrate's September 30, 1997 decision. The plan, which was read into the record, stated that with regard to child support, appellant would "pay the same percentage of the guideline amount as is called for in the current shared parenting plan, that being 32 percent of the guideline amount."
Appellant also asserts that the magistrate's deviation from the guidelines in his re-calculation of the child support was amply supported by the magistrate's findings of fact, to wit: the children are residing with appellant one-half of the time, and appellant is obligated to pay one-half of the children's day care expenses.
The record shows, however, that contrary to the magistrate's general finding that the children reside with appellant one-half of the time, under the revised shared parenting plan, the children actually reside with appellant one-half of the time only every other week. During the other two weeks, the children spend twenty-two more hours with appellee than with appellant. As already noted, over a two-week period the children reside on average seventy-eight and one-half hours per week with appellant (down from one hundred three hours per week under the original shared parenting plan) and eighty-nine and one-half hours per week with appellee (up from sixty-five hours per week).
The record also shows that under the original shared parenting plan, appellant was "obligated to pay one half of the children's day care expenses." A review of the original shared parenting plan clearly shows that such expenses were not a factor in the magistrate's thirty-two percent deviation from the child support guidelines. Rather, appellant spending so much time then with the children was the sole factor. Yet, without any explanation from the magistrate, such expenses became a key factor in the magistrate's thirty-two percent deviation in his re-calculation of appellant's child support obligation.
In light of the foregoing and in light of the supreme court's mandate that Civ.R. 60(B) is a remedial rule to be construed liberally with a view for effecting just results, Scioto Cty. Bd. of Elections, 67 Ohio St.3d at 136, we find that the trial court's decision to grant appellee's Civ.R. 60(B) motion under the circumstances of this case was not so arbitrary, unreasonable, or unconscionable as to constitute an abuse of discretion. Appellant's sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] The original shared parenting plan specifically provided for the children to "reside with the Mother on Thursdays beginning at 5:00 P.M. through Sundays at 10:00 A.M., and * * * with the Father beginning on Sundays at 10:00 A.M. through Thursdays at 8:00 A.M." Such parenting time equals sixty-five hours per week with the mother and one hundred three hours per week with the father. The one hundred three hours include the time between 8:00 A.M. and 5:00 P.M. on Thursdays.
[2] In the revised shared parenting plan, the magistrate mistakenly provided for the children to reside with their mother during week one from Saturday to Sunday. The mistake was ultimately corrected by the trial court in December 1997.